```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Deborah Lefebvre

    v.                                            Civil No. 18-cv-4-JL
                                                Opinion No. 2019 DNH 042

U.S. Social Security
Administration, Commissioner

**ORDER ON APPEAL**

Deborah Lefebvre has appealed the Social Security Administration's ("SSA") denial of her application for a period of disability and disability insurance benefits. An administrative law judge ("ALJ") at the SSA ruled that, despite severe impairments, Lefebvre retains the residual functional capacity ("RFC") to perform past relevant work, and thus is not disabled. See 20 C.F.R. § 404.1505(a). The Appeals Council granted Lefebvre's request for review, see id. § 404.967, vacated the ALJ's decision, and remanded for further proceedings. On remand, the ALJ reached the same conclusions as in his first decision. The Appeals Council denied Lefebvre's second request for review, with the result that the ALJ's second decision became the final decision on her application, see id. § 404.981. Lefebvre then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Lefebvre has moved to reverse the decision.  See LR 9.1(b).
The Acting Commissioner of the SSA has cross-moved for an order
affirming the ALJ's decision.  See LR 9.1(e).  After careful
consideration, the court denies the Acting Commissioner's motion
and grants Lefebvre's motion to the extent that it remands the
case to the Acting Commissioner for further proceedings.

I.   **Applicable legal standard**

The court limits its review of a final decision of the SSA
"to determining whether the ALJ used the proper legal standards
and found facts upon the proper quantum of evidence." Ward v.
Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  It
"review[s] questions of law de novo, but defer[s] to the
Commissioner's findings of fact, so long as they are supported
by substantial evidence," id., that is, "such relevant evidence
as a reasonable mind might accept as adequate to support a
conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quotations omitted).  Though the evidence in the record may
support multiple conclusions, the court will still uphold the
ALJ's findings "if a reasonable mind, reviewing the evidence in
the record as a whole, could accept it as adequate to support
his conclusion." Irlanda Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The court therefore
"must uphold a denial of social security . . . benefits unless

'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## II.  Background[1]

The ALJ invoked the requisite five-step sequential evaluation process in assessing Lefebvre's request for disability and disability insurance benefits.  See 20 C.F.R. § 404.1520.  The ALJ found that Lefebvre was insured under the Social Security Act through September 30, 2019.  Although Lefebvre had engaged in substantial gainful activity between April 2016 and early January 2017, the ALJ determined that there had been a continuous 12-month period during which Lefebvre did not engage in substantial gainful activity between the alleged onset of her disability on February 11, 2011 and the date of the first hearing decision on September 16, 2015.[2]  The ALJ next analyzed the severity of Lefebvre's impairments.  At this second step, the ALJ concluded that Lefebvre had two severe

---

[1] The court recounts here only those facts relevant to the instant appeal.  The parties' more complete recitation in their Joint Statement of Material Facts (doc. no. 11) is incorporated by reference.

[2] Admin. R. at 24-25.

impairments: degenerative disc disease and left shoulder tendonitis.[3]

At the third step, the ALJ found that Lefebvre's severe impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations.[4] See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. After reviewing the medical evidence of record, medical opinions, and Lefebvre's own statements, the ALJ concluded that Lefebvre retained the RFC to perform sedentary work, see 20 C.F.R. § 404.1567(a), including:

> the ability to lift ten pounds occasionally and five pounds frequently; stand and/or walk two hours in an eight-hour day and sit for six hours in an eight-hour day. She has unlimited use of the hands and feet to push, pull, and operate controls, can occasionally preform all postural activities and she can occasionally reach overhead with the left upper extremity. Otherwise, the claimant has an unlimited capacity for handling, fingering, feeling and reaching.[5]

Finding that, even limited in this manner, Lefebvre was able to perform several types of past relevant work, see 20 C.F.R. § 404.1565, the ALJ concluded his analysis and found that

---

[3] Id. at 25.

[4] Id. at 26.

[5] Admin. R. at 27.

4

Lefebvre was not disabled within the meaning of the Social Security Act.[6]

III. **Analysis**

Lefebvre challenges both the ALJ's step three and step four determinations. At step three, she argues that the ALJ erred in analyzing whether her condition meets or medically equals listing 1.04A. See 20 C.F.R. § 404, Subpart P, App. 1. At step four, she contends that the ALJ failed to conduct an adequate function by function analysis in determining RFC by inadequately considering evidence of her difficulty with prolonged sitting. In support of both arguments, Lefebvre cites the results of the her most recent lumbar MRI. The court does not directly resolve these arguments, because it finds that the ALJ made factual errors in interpreting the record that may have impacted his assessment of these MRI results, and therefore remands the case to the Acting Commissioner. The court explains Lefebvre's arguments to show the relevance of the MRI results.

    **A.    Step three – listing 1.04 analysis**

The ALJ began his step three analysis by explaining that the claimant bears the burden of showing that an impairment meets or medically equals the requirements of a listed

---

[6] Admin. R. at 36-39.

5

impairment, by means of medical proof that the impairment satisfies all medical criteria for the listing and has lasted or can be expected to last for at least 12 months.[7] He held that Lefebvre had not alleged or shown that her impairments were severe enough to meet or medically equal a listed impairments, noting that there was no acceptable medical opinion evidence finding her that her impairments reached listing level.[8] The ALJ specifically considered listings 1.02 and 1.04, but found that the severity of Lefebvre's impairments did not meet or medically equal those listings.[9]

Lefebvre challenges only the ALJ's listing 1.04 analysis. The ALJ found that Lefebvre's degenerative disc disease did not meet or medically equal the criteria of any impairment in listing 1.04 because "[t]he clinical evidence presented does not establish compromise of a nerve root or the spinal cord."[10] Lefebvre argues that the results of her January 2015 cervical MRI show pressure upon a nerve root, and that her October 2016 lumbar MRI noted nerve "impingement" of the LR nerve root and bilateral SI nerve root. The listings suggest that

---

[7] Admin. R. at 26-27

[8] Id. at 27.

[9] Id.

[10] Id.

6

"impingement" and "compromise" are equivalent.  Compare 20 C.F.R. § 404, Subpart P, App. 1, 1.00(K) ("Disorders of the spine, listed in 1.04, result in limitations because of distortion of the bony and ligamentous architecture of the spine and associated impingement on nerve roots (including the cauda equina) or spinal cord."), with 20 C.F.R. § 404, Subpart P, App. 1, 1.04 ("Disorders of the spine . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.").  Lefebvre also contends that the record shows she meets the other requirements of listing 1.04A, which the ALJ did not reach.

The Acting Commissioner argues that the nerve "abutment" found by the cervical MRI is not nerve "compromise," and that any error in finding no "compromise" does not require remand, because of evidence in the record that Lefebvre does not meet the other requirements of listing 1.04A and the lack of medical opinion evidence supporting equivalence with a listing.

### B. Step four – RFC analysis

The ALJ supported his RFC finding with a detailed discussion of the evidence in the record.  He found Lefebvre's "symptom complaints not consistent to the extent alleged," because "the objective medical testimony of record does not fully support" her testimony of "an extremely limited range of

7

functional abilities."[11] He evaluated the medical opinion evidence, giving little weight to statements by an occupational therapist, Lefebvre's treating physician, and Lefebvre's mother, and substantial weight to the opinion of Dr. Burton Nault, the state agency medical consultant.

Lefebvre argues that the ALJ failed to sufficiently conduct a function by function analysis of her ability to sit for long periods during a workday. She argues that significant evidence in the record supports her position that she could not sit for extended periods, and that the ALJ improperly relied on general credibility assessments in concluding otherwise. Among other evidence, she highlights the results of her October 2016 lumbar MRI, which Dr. Timothy Sievers, one of Lefebvre's pain management physicians, described in treatment notes as "showing some significant findings which correlate with her current symptoms."[12]

The Acting Commissioner argues that the ALJ adequately explained his finding that Lefebvre could "sit for six hours in an eight-hour day" through the objective medical evidence and reliance on the opinion of Dr. Nault. The Acting Commissioner admits that the October 2016 MRI shows some progression of

---

[11] Admin. R. at 28-29.

[12] Id. at 948.

symptoms, but contends that in the absence of any evidence of altered treatment or provider opinions supporting new functional limitations, the ALJ could still reasonably rely on Dr. Nault's 2013 opinion.

The ALJ devoted adequate attention to Lefebvre's ability to sit for long periods. Along with a detailed discussion comparing Lefebvre's alleged symptoms to the medical evidence, the ALJ specifically found that she could sit for six hours in an eight-hour day in his RFC finding, a conclusion matching Dr. Nault's report.[13] Adequately explained reliance on the function-by-function analysis of an adopted medical opinion meets SSA requirements. See Gallagher v. Astrue, No. 08-cv-163-PB, 2009 WL 929923, at *8 (D.N.H. April 3, 2009) (Barbadoro, J.) ("[B]ecause he relied on the opinion and functional assessment of Dr. Cylus in the body of his decision, the ALJ met the requirements of SSR 96-8p when determining Gallagher's RFC."). Cf. Trudnak v. Berryhill, No. 17-cv-195-LM, 2018 WL 2058103 (D.N.H. May 3, 2018) (McCafferty, J.) (RFC finding on ability to walk and stand not supported by substantial evidence where ALJ found less limitation than any expert evaluation in the record).

The ALJ analyzed of Lefebvre's ability to sit with sufficient process, but the substance of the analysis must also

---

[13] See id. at 27, 122.

9

be supported by substantial evidence.  Although Lefebvre has not directly challenged the ALJ's reliance on Dr. Nault's opinion, she does argue that the ALJ failed to adequately account for the findings of the 2016 MRI.

    **C.    October 2016 lumbar MRI**

The ALJ addressed the results of MRIs of Lefebvre's spine, but misinterpreted the record and classified restatements of old MRI results as new MRIs.  These errors potentially affected the ALJ's step-three and step-four analyses. Because of these factual inaccuracies, his decision is not supported by substantial evidence.

In a section of the step-four analysis found in both the decision prior to remand and the current decision, the ALJ noted that despite Lefebvre's reports of severe symptoms, "radiological imaging reports describe only mild to moderate degeneration and foraminal narrowing in the lumbar spine (Exhibits 6F/4, 9F, & 20F/7)."[14]  The cited exhibits are July 8, 2013 and June 26, 2014 MRI of Lefebvre's lumbar spine, and treatment notes by Dr. Sievers interpreting a January 20, 2015 MRI of Lefebvre's cervical spine.[15]

---

[14] Admin. R. at 30, 137.

[15] Id. at 610, 660-664, and 795.  Exhibit 9F is missing a page from the report on the June 2014 MRI.  The full report is

10

In a later section addressing medical evidence submitted after remand, the ALJ explains that Lefebvre presented to Dr. Xiao-Qing Wang in August 2015 complaining of lumbar back pain and bilateral lower extremity pain.[16] But, the ALJ reports, "[l]umbar spine MRI showed no evident foraminal compromise (Exhibit 22F; duplicate at Exhibit 26F/2-10)."[17] The exhibits cited to support this statement are merely reprintings, within Dr. Wang's treatment notes, of the the full report from the January 2015 cervical MRI and the "impressions" portion of the report on the June 2014 lumbar MRI, along with a note of "agree with read," apparently from Dr. Wang.[18]

The ALJ also found that:

> MRI done in May 2016 showed multilevel degenerative disc disease of the cervical spine, with broad-based bulge at the C3-4 level that abutted the left-sided nerve roots. The spinal canal was patent at all other levels. There was no canal or right neuroforamenal narrowing from the bulge at the C6-7 level, with only mild to moderate left neuroforamenal narrowing. The findings on the lumbar MRI were improved, showing that a left-sided compromise seen on a prior study was no longer evident (Exhibit 26F/62-63). A lumbar MRI done on October 15, 2016 showed progress since June 6, 2014 (Exhibit 25F). There was no comparison to the May 2016 lumbar MRI. There is no provider opinion that

---

present in exhibit 10F. Id. at 670-71. The imaging report for the January 2015 cervical MRI is in exhibit 27F. Id. at 956-57.

[16] Id. at 31.

[17] Id. at 32.

[18] Compare id. at 805-08 and 861-63 with id. at 670-71 and 956-57.

11

these MRI findings imposed any further functional
limitation then that set forth within the residual
functional capacity above.[19]

The May 2016 results the ALJ refers to are in fact another duplicate copy of the January 2015 cervical MRI and June 2014 lumbar MRI results.[20] They are repeated within treatment notes for a May 2016 examination by Dr. Wang. It appears that Dr. Wang's examination records include, as a matter of course, the most recent imaging records of the patient.[21]

The court finds no evidence in the record that Lefebvre underwent a lumbar MRI between June 26, 2014 and October 15, 2016, or a cervical MRI after January 20, 2015. The parties' joint statement of material facts refers the MRIs on those dates, but not to any intervening ones.[22] The ALJ's misreading of Dr. Wang's treatment notes led him to understand, incorrectly, that MRIs were conducted in or around August 2015 and May 2016. The ALJ's misunderstanding clearly affected his assessment of the October 2016 lumbar MRI results and related treatment notes.

---

[19] Id. at 33.

[20] Compare id. at 916-18 with id. at 670-71 and 956-57.

[21] See also id. at 870-72 (October 2015 examination), 888-90 (January 2016 examination), 940-42 (September 2016 examination)

[22] See Joint Statement of Material Facts (doc. no. 11) at 7-16.

12

While Lefebvre did not highlight this misunderstanding, she argues that the ALJ did not properly account for the October 2016 lumbar MRI results in his step three and step four analysis. She is not entitled to reversal. Substantial evidence may well still support the ALJ's ultimate conclusions, and the court will not step into the ALJ's role and re-weigh the evidence with a corrected understanding of the record.

But the ALJ's error is not harmless. Substantial evidence does not exist to support the factually inaccurate decision rendered by the ALJ, even if the ultimate conclusions may be supported by the record. This is not a case where the ALJ has only inadequately explained or insufficiently analyzed, and the record still contains substantial evidence to support the ALJ's finding. See Nichols v. Astrue, No. 11-cv-197-JD, 2012 WL 2192446 at *4 (D.N.H. June 14, 2012) (DiClerico, J.). When the ALJ has made factual findings unsupported by the record, remand is required.

IV. **Conclusion**

For these reasons, the Acting Commissioner's motion to affirm[23] is DENIED and Lefebvre's motion to reverse the Acting Commissioner's decision[24] is GRANTED to the extent that the case

---

[23] Doc. no. 12.

[24] Doc. no. 8.

is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_/s/ Joseph N. Laplante_
Joseph N. Laplante
United States District Judge

Dated: March 12, 2019

cc: D. Lance Tillinghast, Esq.
 Amy C. Bland, Esq.